UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: LEONARD E. HUTCHINSON and SONYA C. HUTCHINSON,<br><br>　　　　　　　　Debtors.<br>_____<br>UNITED STATES OF AMERICA,<br><br>　　　　　　　　Appellant,<br><br>　　　　v.<br><br>LEONARD E. HUTCHINSON (JAMES EDWARD SALVEN, CHAPTER 7 TRUSTEE),<br><br>　　　　　　　　Appellee. | No. 1:18-cv-01631-NONE<br><br><br>MEMORANDUM OPINION RE BANKRUPTCY APPEAL |

## I. INTRODUCTION

Before the Court is an appeal filed by the Internal Revenue Service ("the government" or "IRS"), challenging a bankruptcy court decision denying the government's motion to compel a bankruptcy trustee to abandon property. (*See* Doc. No. 7.) The bankruptcy court's denial of the motion to abandon hinged on whether certain estate property, namely a primary residence located in Orosi, California, was of inconsequential value to the estate, under the law, based on the property's encumbrances. (Doc. No.

1

7 at 12.)[1]  After finding that the property was of value to the estate, the bankruptcy court denied the motion to abandon. (*Id.*) The court finds it appropriate to rule on the government's appeal of that order without oral argument. *See* Fed. R. Bankr. P. 8019(b)(3); *see also* Local Rule 230(g).  For the following reasons, the government's appeal will be denied and the judgment of the bankruptcy court will be affirmed.

## II. BACKGROUND

Sonya and Leonard Hutchinson ("debtors") filed for bankruptcy under 11 U.S.C. § 701 *et seq.*, commonly known as chapter 7.[2]  (Doc. No. 7 at 7.)  Included among the bankruptcy estate's property is the debtors' primary residence located in Orosi, California ("the property").  *Id.* at 10.  The estimated market value of that property is $190,000.  (Doc. No. 7-10 at 073.)  After satisfaction of an outstanding deed of trust, as well as certain "transaction[ ] costs" associated with its sale, the property's net worth to the estate is estimated at $110,000-120,000.  (*Id.*)  After the deed of trust, the next encumbrances on the property are the following five secured IRS liens:

| Recording Date | Tax | Interest on Tax | Penalty |
|---|---:|---:|---:|
| 05/23/2011 | $0.00 | $6,450.15 | $44,500.11 |
| 05/23/2011 | $62,913.27 | $17,794.31 | $87,599.43 |
| 07/25/2011 | $40,436.77 | $11,403.79 | $30,549.31 |
| 06/14/2016 | $67,050.11 | $4,938.42 | $42.00 |
| 06/14/2016 | $36,337.67 | $2,052.10 | $0.00 |
| Total: | $206,737.82 | $42,638.77 | $162,690.85 |

(Doc. No. 7 at 9.)

/////

---

[1] Specific page citations to Doc. No. 7 in this order refer to the ECF-generated pagination in the upper right-hand corner of the document header. Citations to the government's Appendix, Doc. Nos. 7-1 through 7-13, use the government's pagination, as do citations to Doc. No. 8.

[2] The government does not dispute the bankruptcy court's findings of fact concerning the value of the property at issue or the IRS liens and agrees that only a question of law is presented by this appeal. (Doc. No. 7 at 6.)  Likewise, appellee raises no factual disputes. (Doc. No. 8.)

During administration of the chapter 7 estate, the government filed a motion to compel abandonment of the Orosi property, arguing that the property is of inconsequential value to the estate based on the above encumbrances. (Doc. No. 7 at 8, 7-5 at 013-014.) Put differently, according to the government, the property is of little or no value in the bankruptcy context because no funds would remain to pay unsecured creditors after payment of the senior deed of trust and the secured tax liens if the property is sold. (*Id.*)

The trustee, James Salven ("trustee"), opposed abandonment of the Orosi property, and on November 14, 2018, the bankruptcy court conducted a hearing on the government's motion. (Doc. No. 7-10.) The bankruptcy judge ruled from the bench and issued a minute order denying the government's motion to abandon, after finding that the Orosi property was not inconsequential to the bankruptcy estate. (*Id.* at 11-12.) A written order also followed on November 16, 2018. (Doc. No. 7 at 11.)

The bankruptcy court's ruling was grounded upon its adoption of the trustee's position as to how the above-described IRS liens should be treated under chapter 7. (Doc. No. 7-10 at 18.) Its ruling found (or at least impliedly found), and no party disputes, that the penalty portions of each lien are "avoided" by operation of the Bankruptcy Code and therefore are not paid as part of the process of satisfying secured creditors. (*Id.*) The bankruptcy court also found, on a point that is disputed on appeal, that the penalty portion of each lien listed above must be preserved (i.e., set aside) for the benefit of unsecured creditors "lien-by-lien" and that the set-aside funds are not simply paid out to satisfy the unavoided portion of the next-in-line secured IRS lien. (*See id.*) As a result of this finding, and for reasons set forth in greater detail below, a smaller portion of the IRS's liens (the non-avoidable portions) would be treated as secured debt, with the remainder rendered an unsecured debt subject to different (and potentially disadvantageous) treatment by the trustee. For the same reason, and because at least some funds would be set aside for satisfaction of unsecured creditors, the bankruptcy court found that the property was not of inconsequential value to the estate and therefore should not be abandoned. (*Id.*)

On November 27, 2018, the government filed its notice of appeal. (Doc. No. 7 at 11.) The appellant government's brief on appeal was filed March 9, 2019, and the appellee trustee's brief was submitted on April 8, 2019. (Doc. Nos. 7, 8.) On April 22, 2019, the government filed its reply. (Doc.

/////

No. 9.) On April 30, 2019, the government filed a notice with the court that the record in the case was complete and the appeal ready for decision. (Doc. No. 10.)

### III. JURISDICTION

The bankruptcy court had jurisdiction in this matter under 28 U.S.C. §§ 1334 and 157. This Court has jurisdiction to decide this appeal under 28 U.S.C. § 158.

### IV. ISSUE

Whether the bankruptcy court erred in denying the government's motion to abandon property of the bankruptcy estate based on the determination that avoided and preserved penalty portions of liens were not of inconsequential value to the estate.

### V. STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed *de novo*, and its findings of facts are reviewed for clear error. *In re Johnston*, 49 F.3d 538, 540 (9th Cir. 1995); *see also In re Anastas*, 94 F.3d 1280, 1283 (9th Cir. 1996). "A finding is clearly erroneous if it is 'illogical, implausible, or without support in the record.' " *In re Gill*, 574 B.R. 709, 714 (B.A.P. 9th Cir. 2017) (quoting *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010)).

"Once a bankruptcy court has determined that the factual predicates for abandonment under 11 U.S.C. § 554(a) are present, the court's decision to authorize or deny abandonment is reviewed for abuse of discretion." *In re Johnston*, 49 F.3d at 540 (quoting *In re K.C. Machine & Tool Co.,* 816 F.2d 238, 244 (6th Cir.1987)); *see also In re Consolidated Nevada Corporation*, 778 Fed. Appx. 432, 436 (9th Cir. 2019).[3] "A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible or without support in the record." *In re Gill*, 574 B.R. at 714 (*quoting TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011)); *see also In re Marshall*, 721 F.3d 1032, 1039 (9th Cir. 2013).

/////

/////

/////

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

4

## VI. DISCUSSION

**A.     Legal Context**

A trustee appointed to administer an estate in chapter 7 bankruptcy proceedings is charged by statute with "collect[ing] and reduc[ing] to money the property of the estate."  11 U.S.C. § 704.  "[T]he trustee's duty is to maximize the assets of the bankruptcy estate to allow maximum recovery for the debtor's creditors."  *In Re Feiler*, 218 F.3d 948, 952 (2000).  But property may be abandoned, rather than reduced to money, if the encumbrances on the property render it valueless to unsecured creditors after the encumbrances and administrative costs are satisfied.  *In re Bolden*, 327 B.R. 657, 667 (C.D. Cal. 2005).  Under 11 U.S.C. § 554, the property must be "burdensome to the estate" or "of inconsequential value and benefit to the estate" in order to be abandoned and may be so abandoned upon the initiative of the trustee or pursuant to a court order directed at the trustee, if requested by a party in interest.  11 U.S.C. § 554.  In both instances notice and a hearing are required.  *Id.*

A trustee also has the power to "avoid" certain liens, i.e. certain encumbrances, when administering a bankruptcy estate.  *See, e.g.,* 11 U.S.C. §§ 724, 726.  This modifies the general rule that "[s]ecured liens pass through bankruptcy unaffected."  *In re Schlegel*, 526 B.R. 333, 342 (B.A.P. 9th Cir. 2015).  "For example, statutory liens that are not perfected or enforceable on the date of the bankruptcy petition against a bona fide purchaser are voidable."[4]  *In re Berg*, 188 B.R. 615, 618 (B.A.P. 9th Cir. 1995) (citing 11 U.S.C. § 545).  The particular statutory category of avoidable liens relevant

/////
/////
/////

---

[4]  No dispute has been raised in this matter regarding perfection of the IRS tax liens at issue.  Such liens operate as follows:

> A federal tax lien is a statutory lien.  A tax lien in favor of the United States arises by operation of law if a person is unable to pay a tax liability after demand for payment is made.  The lien attaches to all real and personal property of the taxpayer.  Moreover, this statutory lien is perfected against a taxpayer without the necessity of filing a Notice of Federal Tax Lien.

*In re Berg*, 188 B.R. 615, 618 (B.A.P. 9th Cir. 1995) (internal citations and footnote omitted).

5

here is penalties, which includes IRS-assessed penalties.[5] *In re Gill*, 574 B.R. at 716 ("Taken together, §§ 724(a) and 726(a)(4) allow a chapter 7 trustee (but not the debtor or a third party) to avoid a lien to the extent the lien secures the claim for a penalty, including a tax penalty.").

As explained below, avoided liens are preserved for the benefit of the estate automatically under § 551, whether they arise from penalties or another category.[6] The legislative history of § 551 clarifies that Congress intended, in part, to "prevent[] junior lienors from improving their position at the expense of the estate when a senior lien is avoided." *In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990). This latter point is critical to the Court's analysis and parties' contentions in this appeal. The court is mindful that § 551 is meant "to increase the assets of the bankruptcy estate." *Id.* (internal quotations and citation omitted).

Upon avoidance of a lien, the trustee "steps into the shoes of the former lienholder . . . and enjoys the same rights in the property that the original lienholder . . . enjoyed." *In re Lebbos*, No. ADV 11-2386-RSB, 2012 WL 6737841, at *14 (B.A.P. 9th Cir. Dec. 31, 2012). This means "a trustee who avoids an interest succeeds to the priority that interest enjoyed over competing interests." *In re Van de Kamp's Dutch Bakeries*, 908 F.2d at 519.

---

[5] Title 11, § 724(a) states that "[t]he trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title." Section 726(a)(4) specifies, in turn:

> … [P]roperty of the estate shall be distributed—
> […]
> (4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;
> […]

Thus, a trustee may avoid liens for fines, penalties, forfeitures, or multiple, exemplary, or punitive damages, within the constraints specified in § 726.

[6] Title 11, § 551, entitled "Automatic preservation of avoided transfer," states in its entirety: "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate."

6

The following hypothetical posed in a scholarly article addressing this subject illustrates in general terms how lien avoidance, encumbrances, and § 551 interact:

> In a hypothetical situation in which the estate owns property worth $1 million, there is a first lien in the amount of $500,000 held by FirstBank; a second lien in the amount of $400,000 held by SecondBank; and a third lien in the amount of $600,000 held by ThirdBank. It follows that the first and second liens are fully secured, whereas ThirdBank has a secured claim for $100,000 and an unsecured claim for $500,000.
>
> Absent § 551, if the trustee avoided the second lien (and it "disappeared"), the still-remaining liens of FirstBank and ThirdBank (totaling $ 1.1 million) would exceed the value of the property ($1 million). FirstBank would be unaffected by the avoidance, but ThirdBank would receive a windfall by improving the amount of their secured claim by $400,000, all while the estate incurred the administrative expense to litigate the avoidance of SecondBank's lien. If the trustee were to sell the property under 11 U.S.C. § 363(b), the unsecured creditors would still not receive any portion of the proceeds from the sale.
>
> Section 551, however, changes the scenario. Again, assuming SecondBank's lien is avoided, if the second lien is preserved for the estate's benefit, the sale of the property for $1 million would yield $500,000 for FirstBank, $100,000 for ThirdBank, and $400,000 for the estate. In short, the estate would enjoy the benefits of having avoided SecondBank's lien and SecondBank and ThirdBank would receive distributions in *pari passu* with other unsecured creditors on account of their unsecured claims.

Lawrence E. Pecan, *Section 551 of the Bankruptcy Code: Avoiding the Perils of the Useless Avoidance of Liens*, 2 BUS. & BANKR. L. J. 91, 93 (2014).

Here, the question is whether the tax and interest portions of the IRS's five liens enjoy a higher priority over the penalty portions of the liens, despite each lien being comprised of tax, interest, and penalties at recordation. It appears that the law does not clearly delineate the extent to which certain categories of avoided and preserved liens might confer greater rights to the estate by operation of § 551, than rights the actual creditor would have held following avoidance of its lien. What priority do avoided penalty liens take? That is the question here.

**B.     Contentions**

Here, the government contends that its five liens are, in essence, divisible, and should be sorted between taxes owed, with interest, and penalty balances. (*See generally* Doc. No. 7.) Once divided,

7

according to the government, the tax and interest portions receive distributions first, given their priority order under § 724(b).[7] (*Id.* at 13-14.) Under the government's theory, this means the potential value to the estate from sale of the Orosi property is evaluated in light of each of the five secured tax balances ($206,737.82), with interest ($42,638.77), before looking to the penalty portions ($162,690.85). (*Id.* at 12-13.) The avoided penalty portions of the liens would receive distributions only if funds remained following satisfaction of the senior deed of trust and the tax and interest portions of the secured IRS liens. (*Id.* at 13-14.) Under this theory of the appropriate distribution, the Orosi property is of inconsequential value to the estate because reduction of the property to money will not satisfy the tax and interest portion of each of the five IRS liens. (*Id.* at 12-13.) Thus, with no funds remaining to pay unsecured creditors, the sale of the property would not benefit the estate. (*Id.*) The preserved liens

---

[7] Title 11, Section 724(b) states:

> (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title (other than to the extent that there is a properly perfected unavoidable tax lien arising in connection with an ad valorum tax on real or personal property of the estate) and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—
> (1)   first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
> (2)   second, to any holder of a claim of a kind specified in section 507(a)(1)(C) or 507(a)(2) (except that such expenses under each such section, other than claims for wages, salaries, or commissions that arise after the date of the filing of the petition, shall be limited to expenses incurred under this chapter and shall not include expenses incurred under chapter 11 of this title), 507(a)(1)(A), 507(a)(1)(B), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
> (3)   third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
> (4)   fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;
> (5)   fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and
> (6)   sixth, to the estate.

therefore have a practical value of $0.

The trustee, on the other hand, asserts that the distribution order of the IRS liens is determined solely by the liens' recordation dates relative to one another, i.e. which lien is senior and which lien is junior. (Doc. No. 8 at 1, 3-4.) Since each of the five IRS liens contains both an avoidable portion and a portion that cannot be avoided, under the trustee's theory the first lien's avoidable portion (penalties) is preserved for the benefit of the estate and deducted from any sale proceeds at the time the tax and interest portions of the liens receive distributions. (*Id.* at 3-4, 7-8.) This process is repeated with respect to the second, third, fourth, and fifth liens, or until such time as all of the property sale funds are exhausted. (*Id.*) Thus, according to the trustee, the Orosi property is clearly not of inconsequential value to the bankruptcy estate because its sale will result in funds for distribution to unsecured creditors. (*Id.* at 2-3.)

C. **Case Law**

As noted, there is little case law on the precise question presented here. However, two decisions cases from this circuit are informative, *In re Bolden* and *In re Gill*. In *Bolden*, a case cited by both parties, a debtor filed a motion to force a chapter 7 trustee to abandon the debtor's residence, valued by the court at $975,000, as property of the estate, arguing the residence was of no value based on its encumbrances. *In re Bolden*, 327 B.R. at 660-61, 666. After satisfaction of an outstanding deed of trust and administrative costs, the court estimated that the net proceeds from the sale of the property would be $567,000. *Id.* at 666-67. That net amount represented the funds available to satisfy encumbrances and unsecured priority claims. *Id.* at 667.

Among the encumbrances on the property were eight secured IRS tax liens totaling $1,324,632.52. *In re Bolden*, 327 B.R. at 659. This amount was comprised of $450,672.75 in unpaid taxes, $249,022.93 in penalties, and $624,936.84 in interest on both the taxes and the penalties. *Id.* The interest later was allocated proportionately between the taxes and penalties owed, based on the avoidable nature of interest on penalties as opposed to interest on taxes. *Id.* at 664-65.

Ultimately, the bankruptcy court concluded that the trustee had a statutory right to preserve the avoided liens for the benefit of the estate, rejecting the debtor's argument that the property should be abandoned based on its encumbrances. *In re Bolden*, 327 B.R. at 664. The trustee estimated that

$339,272 in penalties and interest on penalties would be avoided over the first four liens before funds from the sale were exhausted; therefore, the sale of the property would confer a benefit on the estate. *Id.* at 664-65. In adopting the trustee's view, the bankruptcy court reasoned that "[b]y avoiding the penalty portions of the tax liens and preserving them for the benefit of the creditors, the estate is enriched while the IRS still obtains the principal portion of its liens, with interest, in the order and priority of each respective lien." *Id.* at 665. The bankruptcy court further opined:

> [T]he trustee steps into the shoes of the lienholder, preserving for the estate the respective priority of each lien. The trustee who avoids an interest succeeds to the priority that interest enjoyed over competing interests. Congress' motivation for instituting this provision was to prevent junior lienholders from improving their position at the expense of the estate when a senior lien is avoided.

*Id.* (internal quotations and citations omitted).[8]

Similarly, in *Gill*, a case cited by the bankruptcy court in this case, a bankruptcy appellate panel reviewed a bankruptcy court's decision denying a debtor's motion to compel a trustee to abandon debtor's residence based on its encumbrances. *In re Gill*, 574 B.R. at 711-12. In that case, the trustee had estimated the residence in question would sell for $500,000. *Id.* at 712. After satisfying the $371,000 first lien, which secured a promissory note, the trustee represented that the balance would be put towards a single secured IRS tax lien of $161,530. *Id.* at 711-12. Of that amount, $48,276.33 was

---

[8] The Ninth Circuit has partially quoted Title 11, § 551's legislative history as follows:

> This section is a change from present law. It specifies that any avoided transfer is automatically preserved for the benefit of the estate. Under current law, the court must determine whether or not the transfer should be preserved. The operation of the section is automatic, unlike current law, even though preservation may not benefit the estate in every instance. . . . The section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided.
>
> S. Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5877.

*In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990). The legislative history's reference to "any avoided transfer" and not "lien" is perhaps somewhat misleading due to excerpting; the legislative change encompassed both transfers of property and liens, and did so for the same reason. S. Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S. Code Cong. & Admin. 1978, pp. 5787, 5877.

10

comprised of penalties, which the trustee planned to avoid in order to benefit the estate, allowing for a distribution towards the debtor's $48,000 of dischargeable unsecured nonpriority debt. *Id.*

The bankruptcy appellate panel in that case concluded that the same statutes at issue here "expressly authorized" the trustee "to avoid, subordinate and preserve the penalty portion of the IRS's tax lien for the benefit of the estate's unsecured creditors." *In re Gill*, 574 B.R. at 716. The bankruptcy appellate panel reasoned, in part:

> The purpose of § 724(a) is to protect unsecured creditors from the debtor's wrongdoing. Enforcement of penalties against a debtor's estate serves not to punish the delinquent taxpayers, but rather their entirely innocent creditors. Innocent creditors should not be punished for the actions of delinquent debtor taxpayers. By avoiding the penalty portions of the tax liens and preserving them for the benefit of the creditors, the estate is enriched while the IRS still obtains the principal portion of its liens, with interest, in the order and priority of each respective lien.

*Id.* (internal quotations and citations omitted).

The debtor in *Gill* attempted to distinguish the holding of *Bolden* from his case based on the fact that there were eight secured IRS tax liens in *Bolden* versus only the single IRS tax lien in his case. *In re Gill*, 574 B.R. at 717. The bankruptcy appellate panel rejected this argument, stating simply that "[t]his is a distinction without a difference" and noting that the estate would receive $48,000 from the avoided and preserved penalties whether the IRS had one lien or eight liens totaling the same amount. *Id.*

This case parallels *Bolden* and *Gill* in significant ways: at issue is a property with more encumbrances than the proceeds from its sale can satisfy; a deed of trust that must be satisfied first, with IRS tax liens trailing; and each IRS tax lien including an amount attributable in part to an avoidable penalty. When the decision in *Bolden* and *Gill* are read together in light of the statutory purpose behind avoidance of penalty liens (protecting unsecured creditors from the debtor's wrongdoing), as well as Congress' intent in making preservation of avoided liens automatic (preventing junior lienholders from improving their position at the estate's expense when a senior lien is avoided), it compels the conclusion that the bankruptcy court in this case did not abuse its discretion in denying the government's motion to

abandon. On appeal, the government has failed to distinguish the holdings in *Bolden* and *Gill* in any meaningful way.[9] Nonetheless, below the undersigned will examine the government's arguments in detail.

The government correctly argues that the notion that an avoided lien, preserved for the benefit of the estate, may nonetheless result in a distribution order that in essence elevates junior creditors is not without precedent. In the case of *In re Skumpija*, No. 11-00338-8-SWH, 2013 WL 6092156 (Bankr. E.D.N.C. Nov. 19, 2013), a bankruptcy court was faced with the question of the priority order of a lien avoided as invalid. Upon consideration of a motion to reconsider, the bankruptcy court in that case reversed its prior decision allowing a trustee to proceed with sale of a property over the debtor's objection. *Id.* at *1-3.

Just as in *Bolden* and *Gill*, the property at issue in *Skumpija* was encumbered beyond its fair market value. *In re Skumpija*, 2013 WL 6092156, at *2. Among the encumbrances was a first deed of trust for $330,000 and a second deed of trust for $200,000. *Id.* The latter was avoided by the trustee in an earlier proceeding, with the bankruptcy court finding that the deed of trust, executed between the debtor and her mother, had failed to describe properly or even identify the note which it allegedly secured. *Id.* at *1-2. Three additional judgment liens trailed the two deeds of trust. *Id.* at *2.

While the debtor contended that sale of the property in question would not benefit the estate due to the encumbrances on the property, the trustee countered that proceeds remaining after satisfaction of the first deed of trust would benefit the estate because the trustee would assume the position of the avoided second deed of trust. *In re Skumpija*, 2013 WL 6092156, at *2. The bankruptcy court found that the property was of benefit to the estate and issued an order allowing the sale of the property free and clear of liens. *Id.*

/////

---

[9] Litigants did not argue one difference that the Court notes: it was the debtors in both *Bolden* and *Gill* who moved for an order directing the trustees to abandon property; whereas, here it is the government. Indeed, in *Bolden* the government supported the trustee's opposing motion to turn over property. *In re Bolden*, 327 B.R. 657, 661 (C.D. Cal. 2005). (*Gill* makes no mention of the government taking a position in that case.) That fact that the government moves to abandon in this case appears to be "a distinction without difference," which in no way compels a different outcome from that of *Bolden* and *Gill*. *In re Gill*, 574 B.R. 709, 717 (B.A.P. 9th Cir. 2017).

In requesting reconsideration of the bankruptcy court's decision in this regard, the debtor argued that in stepping into the shoes of the second deed of trust's creditor, the trustee held only an "invalid deed of trust" that amounted to a lien preserved for the estate but "subject to defects *under state law*." *Id.* at *3 (emphasis added). The debtor contended that the trustee's position after avoidance was subordinate to all properly perfected liens on the property, namely the first deed of trust and the three judgment liens. *Id*. Upon reconsideration, the bankruptcy court agreed with this reasoning. *Id*. at 6. In doing so, the bankruptcy court indirectly addressed the question posed by this appeal. The bankruptcy court in *In re Skumpija* recognized that "the manner in which [a lien] is preserved matters a great deal . . . ." *Id*. at *3. In discussing § 551 preservation, that court noted that the statute "consists of one sentence which plainly states" that any transfer avoided under title or lien void under it is preserved for the benefit of the estate but only with respect to property of the estate. *Id*. at *4. However, the bankruptcy court further observed that "[w]here the disagreement lies, and where the statute is silent, is in regard to priority in light of the trustee's successful avoidance of the [second deed of trust] as invalid." *Id*.

In confronting the question of what, exactly, it means to step into the shoes of the creditor whose lien is avoided, the bankruptcy court concluded that doing so "does nothing to enhance (or detract from) the rights of that creditor viz-a-viz other creditors." *Id.* at *4 (internal quotations and citations omitted). In reaching this conclusion, the court explained that the determination of the property rights inherited varies depending on the reason for the avoidance of the lien, quoting a learned treatise as follows:

> [I]t matters whether a lien is avoided based on some defect such as the invalidity of a deed of trust, or a failure of perfection, as opposed to lien avoidance based on preferential or fraudulent transfers. As summarized by Collier's:
>
>> when a trustee avoids a prepetition security interest because the secured party has failed properly to perfect or record its lien, the avoided lien held by the estate is subject to the same state law defect and is likely subordinate to liens properly perfected or recorded prepetition. On the other hand, if the lien is avoided not on the basis of a state law defect where the trustee avoids the lien under section 544(a)(1), but instead, is avoided as a preference under section 547 or as a fraudulent transfer under section 548, the estate steps into the shoes of the holder of the avoided lien and the lien's priority remains the same as it was with

> respect to other liens prior to the avoidance.
>
> 5 *Collier on Bankruptcy*, ¶ 551.02 at 551–4 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2013); *see also, Carvell [v. Bank One, Lafayette, N.A.,]* 222 B.R. [178,] 180 [B.A.P. 1st Cir. 1998] (noting that in preference actions, for example, if an avoided lien's priority was not retained, avoidance would create a windfall for junior lienors, in the form of a benefit unattainable outside of bankruptcy).

*Id.* at *5. Most important to resolution of this appeal is the acknowledgement that when a trustee avoids an encumbrance under the federal bankruptcy code, the lien's priority remains intact.

Applying these principles, the bankruptcy court in *Skumpija* concluded that the defects of the second deed of trust arising inherently under state law also demoted that deed of trust to fifth position, after the properly perfected first deed of trust and three judgment liens. *Id.* at *6. Because avoidance would therefore not benefit the estate until the other four encumbrances were satisfied, and because the other four encumbrances exceeded the value of the property, the court concluded the property was of no value to the estate. *Id.* Accordingly, the court reconsidered its initial order allowing the sale of the property and instead on reconsideration granted the motion to abandon property. *Id.*

The same principles applied by the bankruptcy court in *Skumpija* apply here, though it is in part application of those principles that lead this Court to a result opposite than that reached in *Skumpija*. The subordination of the second deed of trust in *Skumpija* resulted from operation of state law, not the bankruptcy code. Here, in contrast, the ability of a trustee to avoid liens for penalties arises by operation of the bankruptcy code, not state law. Accordingly, the trustee here steps into the shoes of the holder of the avoided lien and the lien's priority remains the *same* as it was with respect to other liens prior to avoidance.[10]

Here, the government asserts that lien avoidance and preservation as outlined in this case allows the "result of diverting property subject to prepetition federal tax liens to pay general unsecured creditors before satisfying actual tax losses by the United States." (Doc. No. 7 at 14-15.) While at first blush the government's argument appears somewhat persuasive, upon a close reading of §§ 724, 726,

---

[10] Here, while only portions of the five IRS liens are avoided, there is no authority suggesting the avoided parts should be considered as separate, distinct, and junior liens vis-à-vis the unavoided portions of the same liens.

14

and 551 together and with, it is apparent that it misses the mark. Compensation for "any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages" is disfavored by law "to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim." 11 U.S.C. § 726. That is precisely why the penalty portion of an IRS lien may be avoided and preserved for the benefit of the estate—not the benefit of the junior lienholder, which in this case is the IRS. Under the circumstances presented in this case, preserving the avoided portion of each lien appears to leave a pot of funds available for distribution to unsecured creditors. While the IRS is one such unsecured creditor, it may not be the only one. Thus, the dispute in this case is not purely academic.

Finally, it is true that "[a]n order to compel abandonment is the exception, not the rule. Compelled abandonment under § 554(b) is generally reserved for instances where a trustee is merely churning property worthless to the estate just to increase fees." *In re Gill*, 574 B.R. at 714 (internal quotations and citations omitted). Here, however, the government has not argued that such misfeasance, the churning of property worthless to the estate, is taking place nor is there any indication of such misfeasance.

In sum, there is no assertion on appeal of errors of fact embodied within the bankruptcy court's decision. Having conducted a *de novo* review of the bankruptcy court's conclusions of law, the undersigned also finds no error or abuse of discretion. Accordingly, the bankruptcy court's decision will be affirmed.

## VII. CONCLUSION

For the foregoing reasons, the bankruptcy court's decision is AFFIRMED.

IT IS SO ORDERED.

Dated:   **May 1, 2020**                              _____
                                                                    UNITED STATES DISTRICT JUDGE